Next case on our call this morning is agenda number 13, case number 107192 Wedge C. Lazenby v. Mark Construction, Inc. Council may proceed when ready. Good morning, Your Honors. Brian Schroeder for the Plaintiff's Appellants, Wedge Lazenby and Derek Decker. Present here in court also are the attorneys who tried the case, Jim Moreci and Mitchell Friedman. Your Honors, we're here asking for J&O v. or alternatively a new trial for Wedge Lazenby and we're asking for a reversal of summary judgment that was what we think is their right, which is a trial on the merits of their case. As to Mr. Lazenby as to Mr. Lazenby, the issues regarding him are that we would like a directed verdict as to both negligence and proximate cause and that a new trial should be held as to damages and assertation of comparative fault. The evidence that we submit requires that is the testimony of the owner of Mark's Construction, Mr. Kobelarz, and he said that under the safety, custom and practices in the construction business, unprotected open floor openings were forbidden. He did not testify that there were any exceptions to that prohibition, to that mandate. He further testified that he knew there was a hole in the floor and that he knew it was dangerous and he left without undertaking any efforts to repair the hole. Under those facts alone, we think that that's enough to entitle Mr. Lazenby to J&OV as to the issue of the negligence of Mark's Construction. We supported that. What's the standard of review on that issue? Well, that is de novo, Your Honor. That is a question of law as to whether J&OV should be granted or not. So no deference needs to be accorded to the trial court's determination and again, on the basis of Mr. Kobelarz's testimony alone, we believe that there's sufficient evidence that a J&OV on that issue was in fact warranted. Again, he testified that the hole was forbidden. He shouldn't have done it. He did it anyway. In fact, earlier that day he had had, I'm sorry, prior to the day of the injury, he had installed fall protection around the hole. He took it down because it was necessary in order for other construction work on the premises to be done. But then at the end of the day, he left and there were still two people in the building, the homeowner, Mr. Israel, and I think someone else who was accompanying Mr. Israel. He left two people in the house with what he said was a known danger that he should not have been allowed to exist. He took fall protection down, didn't put it back. We think this is a clear-cut case of negligence on the part of Mark's construction. They knew the danger. They left it there. Mr. Schroeder, why is it there is an issue of comparative negligence though, isn't there? As far as Lazingby listening to instructions and shouldn't have been in there in the first place? And why isn't it as simple as a finding that the jury found Mr. Lazingby 51% at fault? Because Your Honor, there isn't. Sorry. 51 or greater. There is that issue and that is an issue that should be addressed at the new trial. The reason that we do not believe that that determination was made by the jury is that twice during the instructions, the jury was told you need only consider comparative fault if you first find for the plaintiff, which means you have to find of course a breach and proximate cause. Only then do you decide the issue of comparative fault. And since the jury came back with a general verdict, they did not reach comparative fault because under the case law, Dillon and the other cases that have been cited, it can be said that the jury found in favor of Mark's construction on breach and proximate cause, but then because the jury was instructed not to consider comparative fault if it did not find for the plaintiff, the jury did not consider that issue. I'm not denying that there is evidence of comparative fault, but I'm saying that that evidence need only and should only be considered at the new trial if you grant one. The Mark's construction cites Dillon and a few other cases, but the one they cite in particular that applies here, or they claim at least applies here, is the Guy case from the second district where the second district said exactly that. In a general verdict, we will assume that the jury found no breach, no proximate cause, or we'll find that the jury found more than 51% comparative fault. We submit that Guy does not apply because, again, here the jury was twice instructed, don't worry about comparative fault if you don't find for the plaintiff. Those are double negatives, so putting it differently, you need only worry about comparative fault if you find for the plaintiff. And I think it's inconsistent. There was no special interrogatory in this case, was there? There was not, no. But it doesn't, we didn't need one because the jury was already told you don't have to do this. You do not need to consider comparative fault if you find for the defense. And what Guy does, which I think is wrong, is say we're going to assume on the one hand the jury found for the defense and found there was no breach, no proximate cause, but then we're going to now make the completely contrary presumptions and say the jury actually found for the plaintiff on those issues, but now we're going to say the jury decided the plaintiff was also more than 51% at fault. I think to draw, to say that you can draw contrary presumptions is itself illogical, but more particularly in our case here, the jury was twice told you don't worry about comparative fault until you find for the plaintiff. And there's no evidence in Guy that that instruction was given to the jury. So a bit of a long answer, but the answer to your question, Your Honor, is there is an issue of comparative fault, but it was not, it's not an issue for this case, for this trial that was already held. It's an issue to be taken up at the new trial that we think should be held. Can you talk for a bit about the applicability of the fireman's rule? Certainly, Your Honor. The firefighter's rule applies to Mr. Decker's claims. Under the firefighter's rule, as this Court set forth in Dinney and Court in Washington, owners and possessors of land are not liable for injuries to a firefighter caused by their own negligent acts that caused the fire itself, but they are liable for injuries resulting from negligence that is independent of the fire. In our case here, there's no evidence that Mr. Koboularz's negligence or Wilf and Watton conduct, which I'll get to, in leaving this hole unprotected caused the fire. His negligence occurred when he left the building without putting fall protection over the hole. There's no indication that that's what caused the fire to occur. And for that simple reason, we submit that the firefighter's rule does not apply here. Whatever negligence occurred here, which was about fall protection, didn't cause the fire. And therefore, to say the firefighter's rule applies really is, in our opinion, an overly generic statement painting with a broad brush to say, well, there was a fire, Mr. Lazenby was fighting the fire, he fell down this hole, Mr. Decker then had to go get him, and it was in the course of doing firefighter's work that he did this, so the firefighter's rule should apply. That's not what the case law says in our judgment, Your Honors. Again, the firefighter's rule applies to conduct that causes the fire, but not... The new statute has no applicability, sir. Well, from what I've just said right now about the applicability of the firefighter's rule, I would say no, because the rule itself doesn't apply here because the negligence of the defendant did not cause the fire, and therefore the firefighter's rule has no occasion to be applied. But if you want to say that, for some reason, the negligence of Mars Construction did result in the fire, such that then that triggers the application of the firefighter's rule. 9F, Section 9F, the amendment that was effective in 2003, Randage said, the Second District said in Randage, that will not be applied retroactively. The First District in our case here said the same thing. We would submit that that is wrong. First of all, the legislative debates, which are mentioned in the Eliza Minkus brief, Senator Jacobs made it very clear that the intent in enacting Section 9F was to abolish the firefighter's rule. Randage, the Randage Accord, indicated it did not have access to those histories because Randage was issued shortly after 9F was enacted, but Randage didn't indicate that that was a valid construction based upon the language of 9F, that it was intended to abolish the rule. How do you distinguish Hendrick versus Libertyville High School? Your Honor, I would distinguish that by saying that, in this case, the Merrick Kobelars, the owner of Mars Construction, did not have any right to rely upon the firefighter's rule to think, I don't have to worry about my conduct here because I don't have to owe firefighters any duty, because there were people in the house when he left. There were two people in the house. That's not disputed. His indifference was not limited solely to firefighters. In other words, he didn't say, I know about this firefighter's rule. I know I don't have to worry about firefighters, so I don't care. He did more than just that. He manifested an indifference to everybody because there were people in the house and he left them without any fault, having any fault protection. And therefore, I think the policy considerations justifying the cases you mentioned were in the toward immunity context and school district cases, that's just, in our opinion, apples and oranges here. He had a duty to act and was also manifested by the fact that he put fault protection up in the first place. He took it down granted because work needed to be done, but he chose not to put it back up. And that has to count for something. So that's how we would distinguish these cases. Mr. Schroeder, I'm trying to, I want to give you another chance because I'm trying to understand completely your argument on this general verdict. You know, we the jury find for the defendant, right? Period. Right. Okay. Your argument is that comparative fault is not addressed and jury instructions to that respect were given unless you first find for the plaintiff. That is correct. Right. And why shouldn't this court just assume that there is the possibility that the jury just accepted the defense, namely the defense of comparative fault, and at some point did find for the plaintiff? Because I think that would be speculative and it would, you would be deciding that the jury ignored the instructions. What did the other verdict form say? The other verdict form had itemizations for the injuries that were suffered. And there was a verdict form that set forth, I believe, comparative fault allocations. But I don't think that matters, Your Honor, because if you want to say the jury, we want to say the jury decided comparative fault was more than 51% on the part of Mr. Lazenby, you're saying then that the jury ignored its instructions. And as this court and the appellate court has universally held, we don't indulge in that presumption. I'm just trying to understand why your position isn't speculative. There's a, the verdict form for comparative fault comes out with a number at the end of it for the plaintiff, right? Yes. Right. Where they're told, there's an instruction saying if you find the plaintiff more than 51% negligent that you should find for the defendant, right? And with no special interrogatory, why would we not employ the basic jurisprudence that says on a general verdict form, you take the position that the, without a special interrogatory indeed saying that they ever found for the plaintiff, which you could have asked for, that they accepted the defense of comparative fault in this case? Because again, the jury here was told, don't consider comparative fault unless you first find for the plaintiff. And if, and that's on I think page 513 of the transcripts. No question. Would, if they had found for the plaintiff and found the plaintiff 51% at fault, would, would they have filled out that verdict form that showed comparative fault? No, right? No, they would have. If that was their determination, they would have. What happened is the instruction was if you find, the exact text is on my desk. I'll read it in the reply when I come back and rebuttal. But the jury was instructed if you find, it's on page 520 is where it is, I believe. The jury was instructed if you find that the plaintiff was greater than 51% at fault, or if you find for the defense, use verdict form C. That's what they were told. But they were also told, don't worry about comparative fault unless you find for the plaintiff. So since they were told, don't worry about comparative fault unless you find for the plaintiff, it cannot be assumed that the jury decided to find that the plaintiff was more than 51% at fault anyway. Again, because the jury does not, we don't assume that the jury ignores the instructions it is given. And therefore, the only conclusion we can draw from these instructions is that the jury found for the defense a negligence in proximate cause and stopped there. And therefore, we don't have a 51% hurdle to overcome in this case. That's obviously an issue if you order a new trial that we'll have to deal with, but that's all we're asking is for that opportunity. I hope I cleared it up for you as best I could. I wanted to give you that chance. I understand your position. Thank you. One last point I'll make about the Firefighter's Rule is it does not, if you assume it applies here, and you do not overrule Randitch on the retroactivity issue, Randitch still says that the Firefighter's Rule does not apply to Wolf and Watten conduct. And we alleged, as to both Mr. Lazenby and Mr. Decker, Wolf and Watten conduct in the failure to provide fall protection for the whole. Mr. Lazenby's claims went to trial. The circuit court denied a motion to dismiss the Wolf and Watten claims alleged by Mr. Lazenby. It granted a motion to dismiss as to Mr. Decker, but it only did that after the court had already determined it would not apply, I'm sorry, that the Firefighter's Rule did apply. And therefore, when you look at that in tandem, the court upheld the sufficiency of the Wolf and Watten claims. And therefore, we think that at the very least, Mr. Decker's Wolf and Watten claims should go to a jury. And Randitch did cite a First Sister case, Luce G., that said that Firefighter's Rule also does apply even in cases of Wolf and Watten conduct. We submit that the Randitch reasoning is more persuasive because Randitch follows his court's own statements in the Denny case that the Firefighter's Rule, under that rule, a landowner owes no greater duty than to not engage in Wolf or intentional misconduct. And therefore, that's the basis for arguing that the Firefighter's Rule itself only applies to negligence, not Wolf and Watten conduct. Lastly, as to Mr. Israel's claims and State Farm's claims, they were severed by the trial court. There was no 304A finding as to any of that. And that all is still pending in the circuit court. That's why we did not address it in our briefs. And that's why there's no jurisdiction, either in this court or the appellate court, over any claims regarding State Farm and Mr. Israel. So for these reasons, Your Honors, we would ask that you reverse the circuit court, order new trials for both parties. Thank you. Good morning, Your Honor. James Brannett for the Defendant Appellee, Marks Construction. May it please the Court, Mr. Guan, Counsel for Codefendant Michael Israel has asked me to leave him two minutes to address his issues. I want to first talk about Wedge Lazenby. Justice Thomas asked the exact question. Why isn't this simple? It is simple. The jury found, as presumed to have found, that Mr. Lazenby was more than 50% at fault. Therefore, even if a jury, a directed verdict had been entered against Marks Construction on negligence and proximate cause, the jury still was entitled and correctly found in our favor, because that was exactly what the jury instructions told us to do. The jury found that Mr. Lazenby   and correctly found in our favor, because that was exactly what the jury instructions told us to do. I want to go through the sequence of the jury instructions. The jury instructions were, if you find that the plaintiff has proved that Marks Construction breached the standard of care, then you go on to the question of proximate cause. But if you find he did not prove proximate cause, then, and this is the instruction he's going to read to you on rebuttal, then you go to comparative negligence. But if you find that he did not prove proximate cause, then fill out Form Verdict C. If you find both negligence and proximate cause, but you also find that the plaintiff was more than 50% at fault, fill out Verdict Form C. So all three paths led to the same result, Verdict Form C. And Verdict Form C is what the jury filled out. So there is no way of knowing which of those three paths they chose. There is no way of knowing. You can't deduct that from the jury instructions, because each jury instruction led them to Verdict Form C. What counsel is trying to do is use the fact that a general verdict means that the jury found in favor of the defendant on all of its defenses. And he's trying to truncate it. He's trying to cut it off halfway through. He's trying to say that, well, they're presumed to have found that you were not negligent or that there was no proximate cause. Therefore, they would not have considered the comparative fault. But that's an abuse of that presumption. You can't use a presumption to rebut itself. That is what is illogical here. He's trying to manufacture a fact out of a presumption. And that's not the way that the law works. The law works here is that the presumption is that all three defenses, not as a matter of logic, but as a matter of policy, were found in favor of the defendant. And the reason for that presumption is not logic. It's because of the burdens of the plaintiff, or the appellant in this case, of getting a new trial. If the jury properly found, as he concedes, that they could find, based on that evidence, that Mark's, or that Weds Lazenby was more than 50 percent at fault, then it was entirely proper for the jury to find in our favor. And we don't know whether they did that, so we're not going to speculate that they didn't. To the contrary, we're going to put the burden on the appellant. And that's absolutely necessary, because if you don't put that burden on the appellant, then everybody's entitled to a new trial. There's no way of precluding a new trial, because we can always speculate that they took the wrong path, that they did something illogical. But that's where the speculation comes in, just as Thomas pointed out. That's where the speculation comes in. There's no way of precluding that they ruled based on, only on negligence or proximate cause. But we don't know that, and the jury instructions don't tell us that either, because all those jury instructions led us to the same point, verdict Form C. And that's as simple as it gets. There's harm, whatever error he's alleging as to Lazenby, is harmless at best because the jury properly found that Wedge Lazenby was more than 50% at fault. We go into great length as to why the evidence supported that conclusion in our briefs. I don't, I'm not going to repeat it here because it's unnecessary. It's conceded on their part. Even if we look at the substance of their errors about, allegations of error as to Wedge Lazenby, they're without merit. The trial court properly denied their motion for a directed verdict or their motion for a new trial based on the issue of whether Mark's construction committed negligence, breached the standard of care. It is true that Merrick Colbiart said, yeah, you're supposed to put a barricade around the hole. But contrary to what counsel told you, he did not say there were no exceptions, but he talked about the exceptions. He testified to them. In this case, there were two times when he took down the barricades. Both times were necessary to do the work, to do the drywall work. The jury was entitled to find, therefore, that there were exceptions to this requirement of barricade when the work necessitated it. You can't build a building, you can't, he couldn't build the building and the So the question then becomes, was it within the standard of care for him after he finished the work requiring the removal of the barricades, was it within the standard of care then to leave that, to not put, back up the barricades until the following morning? And he testified why that was in the standard of care. Again, he was, this is a Polish American, well, a Polish immigrant construction worker. He didn't use the phrase standard of care. But we don't require them to say those kind of legal words. The jury is instructed to look at their testimony and see, was this contrary to the standard of care? And here's the important point. What he talked about was, there wasn't going to be anybody in that building, in that house. I locked up the door, I locked up the building. When I left, I cleaned up, I locked up, and I left. I never thought that there were going to be any workers in that building. I never thought there would be anybody near that hole. I didn't even have the materials to put the barricade back up. I wouldn't be able to get them until the next morning, so I was going to wait until the next morning to put the barricade back up. Counsel, it's been suggested there were two people in the house. I'm not sure that that in and of itself makes a difference, but it's argued that it does. First of all, there were no people in the house. There were two people. The owner, Mr. Israel, and a friend of his were in the garage. They were not in the house. There was not access from the garage to the house. Those doors were locked. And that's what Mr. Kobiarts testified to. So even if they were in the garage, they were not able to access that hole, the stairwell. And that's the key, Your Honors, is that in fact, they're arguing that we didn't leave a barricade. The fact is, there was a barricade. There was. It's called the walls of the house with locked doors. The walls of the house surrounded that stairwell opening. The doors were locked. There was no access to them. There was a barricade there. When you have a hole, it doesn't matter whether the barricade's right around the hole or whether it's three feet away or five feet away. The fact is that the walls of the house and the locked doors acted as a barricade. In any event, the testimony was such that the jury was entitled to find that Mr. Kobiarts, Mark's construction, complied with the standard of care, that what he did was reasonable. And that's exactly what the trial court said after he looked at all this evidence. So it is a matter of de novo review for directed verdict, but that's only because the question there is, is there any evidence whatsoever to support a verdict in favor of the defendant? And there is. There is evidence. There's testimony from Mr. Kobiarts himself saying, I met the standard of care. Because I used the walls of the house, nobody was going to be around that hole. And I protected the hole with the locked doors and the house itself. On this new trial, it's abuse of discretion. The trial court heard all the testimony. He assessed the credibility along with the jury. He did not abuse his discretion in denying a new trial on this issue. Now, here in this court, plaintiff is trying to resurrect the issue of whether he should have been granted a directed verdict on the issue of proximate cause. And first of all, he's forfeited this issue. He didn't raise it in the post-trial motion. He didn't raise it in the appellate court at all. And he didn't raise it in the petition for leave to appeal to this court. So it's forfeited. You don't need to address it. But even if you did, again, it's without merit. There was definitely sufficient verdict for the jury, sufficient facts for the jury to find that we were not the proximate cause of Mr. Lazenby's injuries. The jury was entitled to find that Mr. Lazenby never would have gotten anywhere near, he never would have encountered that opening in the floor if he had just followed orders, if he had followed his training, if he had followed his protocol. He disobeyed orders by barging into the house. He disobeyed orders to wait for the hose. He disobeyed his training by going into the house without a thermal camera or an ax to sound in front of him to look for holes. Everybody, including Mr. Lazenby himself, admitted he had responsibility for that, for his own injuries. The jury was entitled to find, not only that he was 51 percent at fault, but based on that evidence, they were entitled to find he was 100 percent at fault. He was the sole proximate cause. Therefore, the trial court judge correctly denied that motion for directed verdict on proximate cause. We have other grounds on proximate cause, but we'll rest on the arguments presented in our brief. Moving on to Derek Decker. The only issue decided by the appellate court, and the only issue properly on review here, is whether Section 9F, the amended section, can be constituted as a constitutionally applied retroactively. And the answer is no. In the Doe v. Dicey's case, Dicey's of Dallas case, this court recently clarified the rules that apply here. And we know that the legislature wanted to apply it retroactively, so the question here is not what their rules are, but what their rules are. The Doe Process Clause of the Illinois Constitution prohibits what this court and others have called retroactive changes in the law. And the court has already defined what that means. That means laws that create a new obligation, that impose a new duty, or that attach a new disability for a transaction that took place in the past. And the House of Representatives has already put the Enrich case directly on point. Here this court said that the legislature cannot retroactively impose new duties. In that case, it was only a day. The new law effectively imposed a duty on the part of the school to refrain from willful and wanton conduct. And the court said that, no, that's not constitutionally permissible. The school district had a constitutional right, a vested right, in the law as it existed on the day that law was enacted, and the liability was sought to be imposed, for the act on which liability was sought to be imposed. That's exactly the same here. On August 30, 2001, under this court's laws, cases, under the firefighters' rule, it had no duty to Mr. Decker. What they are trying to do is impose retroactively a new duty. And that's exactly the kind of ex post facto law that American jurisprudence abhors. The idea that you don't know what you're required to do, but we're going to hold you liable because sometime later we decide that what you did was wrong. That's contrary to every notion of justice and fairness that we have here. We need to know how to judge our behavior, how to guide our behavior. And you can't do that unless, if you're trying to do that retroactively. Their only response is, we didn't rely on that rule. And they cite again the two people, but again, those two people were not in the house, they were in the garage. And that's a red herring in any event, because they weren't firefighters. The question here is, if Section 9F abrogates the firefighters' rule, that imposes a whole new set of obligations on the part of landowners. We landowners effectively, if the firefighters' rule is abrogated, become insurers for firefighters. We not only have to protect against people falling in holes, we have to protect against firefighters being injured by fire or by the emergency. So we would have had to do things to protect against a fire taking place from our negligently causing a fire. Then we would have to protect against that. And that's what they're trying to do, is by abrogating the firefighters' rule under Section 9F, is to retroactively impose a new duty, a new obligation on the part of landowners to take extraordinary steps to prevent fires or any emergency. And that's not right. It's not allowed, and it's contrary to the notions of due process in the Illinois Constitution. With respect to whether Section 9F abrogates the firefighters' rule, whether that was the legislature's intent, I think Randich was correct that that's ambiguous. And so consequently, the court would have to look into not only the legislative history, but also would have to look into the constitutionality of it anyway, whether it can do that. And so I think the court is best served by short-circuiting that and going directly to the determinative issue, and again, the only issue raised in the appellate court, which is whether it can be constitutionally retroactively applied. Leave for another day the question of what the intent of the legislature was with that section, because nobody's really briefed that. That never was even raised in the appellate court. And it wasn't important here, because I'm trying to protect the appellate court judgment, not something that wasn't raised there at all. And that gets into this final question about the new issues raised for the first time here, about whether the common law, firefighters' rule, applied to Derek Decker. That issue was not raised at all in the appellate court. Nor was it even raised in the petition for leave to appeal to this court. Council concedes that, that under the normal rules, the general rule, he has waived and forfeited those issues. And he just asks, basically throws himself on the mercy of the court to address it anyway, with notions of justice. But, Your Honor, it's the fairness, or the forfeiture of the waiver rule, is a rule of justice itself. The appellate court is not a meaningless way station. It is not, if you were to address this issue, you would be telling the appellate court, basically, you wasted your time. And that's not fair. That's not just itself. And it's not a good way of encouraging people to preserve proper the rightful, the correct issues that this court should address. It also deprives us of a whole round of briefing that we could have raised on this issue. We also point out that what they're trying to do is say that we are the ones that negligently caused the emergency here. The firefighters' rule applies to the emergency, not just fires, but to the emergency. The emergency was that Lazenby was needed to be rescued. So that's a direct application of the firefighters' rule. Also, the cases they cite talk about we had to, with the exceptions, apply only when there's a duty to warn if the firefighter doesn't know about the hazard. But here, Decker himself admitted he knew of the hole. He saw it in the thermal camera, and he knew about it. That's why he was going down a ladder in it. So he knew about the hole. That wasn't the cause. The cause of his fall was the Lazenby's need to be rescued. I'd like to leave whatever time is left for Mr. Gaughan, unless there are questions. Thank you. Good morning. May it please the court. Jim Gaughan on behalf of the appellee, Michael Israel. Mr. Gaughan, I don't want to take any of your limited time, but I think it's worth noting that you filed a brief, but your client, Israel, was dismissed before trial. Is that right? That's correct, Your Honor. And plaintiffs didn't raise any issues with respect to Israel in their brief, did they? Not in the brief before, Your Honors, except to the extent that the Firefighters Act applied to both Mr. Israel and to Mark's construction. And you're right, Mr. Gaughan, that the firefighters' rule applies to both Mr. Israel and Mark's construction. And you're right, Your Honor, that plaintiffs do say that Mr. Israel is not a party to this appeal, but he was certainly a party to the appeal before the First District. In fact, he was a prevailing party. So, Your Honors, whether the court would affirm the First District opinion or simply find, as plaintiffs would suggest, that Mr. Israel is not a party to these proceedings, the result would be the same, in that the First District opinion would stand in favor of Mr. Israel. Now, this win-win scenario for Mr. Israel is certainly something that he's entitled to. Mr. Israel was a homeowner... Counsel, I'm sorry, your time is now up. Go ahead and take a couple of minutes and see what you can do. Just no more than that, please. Thank you, Your Honor. Mr. Israel was the homeowner while the home was under construction. He did not live there at the time of plaintiff's accident. After Mr. Israel prevailed at trial through a series of rulings, plaintiffs challenged Mr. Israel to establish Mr. Israel's counsel in a post-trial motion. Plaintiffs then filed an appeal challenging the ruling in Mr. Israel's favor as to the Firefighters Act and as to Mr. Israel's counsel. Mr. Israel then took it upon himself to raise jurisdictional issues before the First District. And to establish jurisdiction over the firefighters' ruling, the First District interpreted the ruling as a case of negligence. The First District found, and I quote, the trial court severed all matters relating to State Farm and its representation of Mr. Israel from issues relating to negligence claims and application of Section 9F of the Act. As a result, the issues relating to the negligence claims and application of the Firefighters Act remained in this case. The First District then went on to define Mr. Israel as one of the defendants, capital D, and found, and I quote, the trial court did not err in granting the defendants, capital D, motion for summary judgment. As set forth in our briefing, plaintiffs have waived any challenge to the rulings in favor of Mr. Israel. And in any event, there is no grounds to reverse the rulings in favor of Mr. Israel in that he had no responsibility for plaintiff's injuries. Mr. Israel respectfully requests that this court affirm the First District order, or if the court finds that Mr. Israel is not a party to this appeal, that this esteemed panel leave the First District order standing as to Mr. Israel. Thank you very much. Thank you, Counsel. You have two minutes right on the nose. Thank you, Your Honors. I will pick up in reverse order. The last page of our prior brief, page 19, cites page 2,545 of the record. That's the order the circuit court entered saying, all matters, and I emphasize that, all matters regarding State Farm and Michael Israel are severed and cannot be referred to the circuit court. I would like to be more clear about the fact that Mark's construction can go up on appeal because the order denying the post-trial motion as to Mark's construction at a 304A finding, there is no such order for either State Farm or Mr. Israel. Neither State Farm nor Mr. Israel were at issue in the appellate court or in this court, and you cannot rely upon statements in the appellate court to manufacture jurisdiction when the underlying circuit court proceedings don't give you that jurisdiction. That's where this instruction is found, and it says, if you find for the defendant Mark's construction and against the plaintiff, wedge Lazenby, or if you find the plaintiff's contributory negligence was more than 50% of the total approximate cause of the injury or damages for which recovery is sought, then you use verdict form C. That's what it says, but again, as I've said before, the jury was told, we've got dueling presumptions here, and under the instructions in our case, which you have to take as a whole, the jury was told, don't worry about comparative fault unless you find for the plaintiff. They didn't find for the plaintiff, so they didn't worry about comparative fault, and to say, we're going to presume you found A and then presume, on the other hand, you didn't find A, I think is illogical and contrary to the instructions at issue in this case. As to the barricade issue and where Mr. Israel and his companion were at the time, whether they were in the garage or not, I think if you read the record, I'm not sure that the assertions by Mr. Brannan are borne out by the testimony at trial, but what I can tell you is that the barricades were beyond that. It was Mr. Israel's house. He could have went wherever he wanted. It was his property. Also, the barricades that Mr. Colbiar's claims he may have relied upon to support his failure to provide any fall protection, none of them warned of a hole in the floor. Locking a door doesn't say that there's a hole in the floor. Orange construction fencing doesn't say, oh, if you go inside, there's this hole in the floor that you should worry about. So these things he did didn't warn of this hole, and beyond that, even the barricades were not forbidden. Mr. Colbiar has never said, I can do this. He said that under the safety customs and practices, open and unprotected floor openings were forbidden. He never said, well, I can do it at nighttime and that's okay, or I can do it if I don't think anyone's going to be in the house, or it's okay if I lock the door. He didn't testify to any of that. So what he's doing is saying, here's why I chose not to take any action. Here's why I did not take any action. He never said anything to the contrary, and his rationalizations about why he did nothing are simply that. Their rationalizations, they are not evidence that he complied with the standard of care or that his conduct was in some manner reasonable under the circumstances. The firefighters rule, we're not seeking to make, impose some duty that didn't exist. What this is all about is, the fire department, whether it's negligence or wolf and wanton conduct, that issue by Mr. Colbiar's caused the fire or caused the emergency. As we've said, we don't think that that's true, but if that's what you rule anyway, we're not imposing a new duty here that was heretofore unknown, because Mr. Colbiar's obviously owed a duty to guard this hole against everybody else in the world that weren't firefighters. Mr. Israel, his companion, someone else who may have been in there, a worker who got there maybe the next morning before Mr. Colbiar's did, and to say that I can ignore firefighters, even though I may owe duties to other people, we're not asking that he have been mandated retroactively to do something he wasn't otherwise required to do. He was required to do it. If Mr. Decker and Mr. Lazenby were not firefighters, they wouldn't have gotten their claims dismissed for the lack of a duty being owed. So we're not saying Mr. Colbiar's should have done something that he didn't have to do. He had to do it anyway. We're just arguing that there's a class of people here that should fall within the scope of the law, and that's why we're having to have taken some action to prevent this hole from being there unprotected. There's nothing radical, nothing revolutionary about that at all. If there are no other questions, we would ask again that you reverse the judgment of the appellate court, order new trials as to both Mr. Lazenby and to Mr. Decker. Thank you very much. Thank you, counsel. Case number 107192, agenda number, will be taken under advisement as agenda number 13.